2-17-0957 Wasco Sanitary District v. Brizuela Special District, Plaintiff Appellant E. Ramos, Brizuela, Ed Adams, Defendants, Appellees Charles Oscar Ramos v. Tom Clemmons, Appellees v. Wasco Sanitary District, Tom Clemmons, Defendants, Appellants Arguing on behalf of the Defendants and Appellants, Mr. Matthew M. Welch Arguing on behalf of the Defendants and Appellees, Mr. Adam R. Wright Also arguing on behalf of the Defendants and Appellees, Mr. James H. Welch Thank you. Mr. Welch, you may proceed. May it please the Court, my name is Matthew Welch and I'm appearing on behalf of the Wasco Sanitary District. The issue before you today is whether a February 2014 circuit court order violated the separation of powers doctrine by appropriating to the judiciary the district's discretionary authority under section 12.1a of the Wasco Sanitary District Act, which gives discretion on when and how to defend and indemnify its officers and employees. If this order was in fact abut in violation of separations of power doctrine, the 2014 order was void and the district cannot be in contempt for its violation. As a result thereof, the February 2018 order must be vacated. Didn't the Sanitary District Board vote in 2008 or 2010 to defend and indemnify these actions once they were filed? They voted to defend and indemnify the trustees. They voted to indemnify the attorney Muscarelle. Okay, so they made that conscious decision, but was the subject of the February 2014 order, correct? Or February 2014 order? Yes, the February 2014 order was the result of the declaratory on whether the vote was proper and within their discretion. As to Mr. Muscarelle, isn't it pretty specific? It does say indemnify, I think, in the minutes or whatever document reflects this vote. But then it's very specific as to things that that includes, including attorney's fees, correct? I believe the motion itself was to indemnify him. But the vote? The vote was, not to interrupt, the vote was, there was a specific motion and the motion was to indemnify Mr. Muscarelle. But in that motion was included the language of attorney's fees. Somewhere in there it said attorney's fees, which would cover what we're here about, correct? If it was, in fact, in the motion, yes. Were there affirmative defenses raised by your opponents? Yes, there were. And if that's the case, did the trial court rule on the merits of those motions? So, again, if you read the opinion, what the trial court was stating is that they reviewed the vote. They couldn't, the judge could not say that the trustees abused their discretion when they voted to provide the defense and indemnification. And that under those circumstances, he issued a broad order that the district shall pay all the legal fees related to this matter. Now the issue is that section 12.1a is very broad. It is qualified and it is discretionary. And it's qualified in that they're prohibited from identifying for alleged acts occurring outside the scope of their authority, willfully wanton acts. As this panel is aware, the fifth amended complaint, which was not in existence during the 2014 order, it was the third amended complaint. And the fifth amended complaint was before you. And this panel determined that three violations of state statute were properly alleged. Specifically, public trust. Yeah, the public trust doctrine, the public officers prohibited activity in section 3D of the sanitary act. So the fifth amended complaint was filed after the February 2014 order of Judge Acknett, correct? Correct. Why then was there no motion to reconsider that order or appeal it? Well, because the district believed that the order as a declaratory was limited to its facts. It didn't believe that it was under the impression and it didn't believe that this order was, in fact, taking away its discretion under section 12.1a. Well, wouldn't the prudent thing to do, wouldn't it have been to file a motion to reconsider or appeal it? So you have a definitive answer. Well, when you file a motion to reconsider, you know, Judge, Your Honor, it switches the burden of proof. You know, the issue is did this order violate the separation of powers doctrine? And if it did, you know, it's forcing the local body to come to it. We are not come to the judiciary. We are not saying that their acts are not subject to review. But the proper way is the order should have been limited to the facts before and to the vote that was taken. So if the order wasn't proper, then why wasn't it challenged? Because we didn't believe it was as broad as the court interpreted. Okay. But it's not believing that it's as broad as the court interpreted is maybe a legal opinion. But first of all, it says pay the costs of FIALA 1 and FIALA 2. By the time 2014 rolled around, it had been this FIALA 1 and 2 had been around for some time. We are now in 2018, and it's still around. Why didn't there – why wasn't there some other action before this – the problem that now brings us here, the contempt? Well, the Fifth Amendment complaint was filed. And based on the Fifth Amendment complaint, the current district board believed it was outside their scope of authority under 12.18 to provide the indemnification due to the will from one and outside the scope of their authority, exceptions of 12.18. People can believe anything they want, but if you have a court order that orders you to do something, I mean, typically most people would think it prudent, I think, to either challenge that or follow the court order, one of the two, as opposed to just believing that it's wrong. Well, it's not that we believe it's wrong. We didn't believe it was as broad, because when you read the opinion, it's discussing about how the 2014 – the judge said he could not find that the 2014 vote was beyond the discretion of the then trustees. But the facts and circumstances had significantly changed with the 2017 vote and the filing of the Fifth Amendment complaint, such that – and, again, that the board did not believe the injunction was as all-encompassing as a certain court filed. Are we talking about duty to defend and indemnification, or just indemnification, or just duty to defend? I'm sorry, can you repeat that question? I'm looking at this kind of like insurance contract, and the insurance company doesn't have to indemnify somebody until there's a judgment, right? Maybe I'm misunderstood, but there's a duty to defend. And so when your board took a vote, what exactly did they vote on? Did they say, we will subsidize your defense, but we won't indemnify you? Or did they say, we reserve our rights on the basis that maybe the complaint may or may not be proven? I mean, what exactly is the board attempting to achieve by whatever ordinance or resolution that passed? Are we talking about the 14 vote or the 17 vote? 17. The 17 vote. So the insurance law doesn't apply to governmental indemnification provisions. However, they reviewed the complaint under – there is very specific language that, under the statute, that they cannot provide defense or indemnification for acts that are willful and wanton or outside the scope of their employment. The district, on review of the complaint, which this – again, this panel has determined that violations of state statutes, self-interest state statutes are properly alleged, that the board removed the defense and indemnification because they believed under Dillon's rule that they don't have the authority to – Dillon's rule? There even – oh, Dillon's rule exists or doesn't it? I mean, I haven't heard the word Dillon's rule in about 25 or 30 years. So you're citing Dillon's rule for this proposition that they don't have the authority to at least provide a defense until such time there's adjudication on the merits? Well, first of all, I don't believe they have a duty to. The 12.1a is discretionary. It requires a majority vote. They have under – with the right to grant is the right to repeal. We don't – this has not passed the pleading stage, the Fiala litigation. It is currently – an answer to the complaint hasn't even been filed. So there's been no prejudice in any way. The trustees who voted to indemnify themselves voted to indemnify themselves after the fact, after the alleged occurrence happened. They didn't create a policy or a reliance prior to the alleged acts. Have you followed the class actions relating to fax machines and the improper or illegal faxing, wherein the class sues the individual defendant who then, quote, unquote, enters into an agreement with the class attorney and confesses error, admits a violation under the act with the understanding that the class attorney will not seek judgment against the individual individually? But will go after the insurance company? And in this instance, if we apply the logic of that scheme or strategy, for want of a better word, if there is no defense, these individuals may end up agreeing with the plaintiff under the basis that there is wrongdoing so long as they don't sue or attempt to satisfy the judgment against them. And now you or your client will be sitting there, standing there, looking at a judgment that was entered into based upon a confession of the defendants in this proceeding. Are you aware of that strategy? There are cases out there. There are numerous cases out there. There was no strategy in there to do anything of that nature. I do not practice insurance law. No, I'm not saying that's your strategy. I'm saying that there is a strategy out there wherein the defense is provided, but the defense is such that there is no defense because the defendant capitulates and leaves the insurance company that's providing the defense holding the bag. Well, Your Honor, I would say that the discretion, the General Assembly has left the discretion with the board. If the board takes that action that exposes the district, well, the district is subject to, they have to run for reelection. And if they take acts that are not in its best interest, they have to report to its citizens. Go ahead. Finish your statement. I'll finish. Well, I apologize. I found what I was looking for. It's the minutes from the May 4, 2010 meeting where the three trustees, who are also the defendants in this case, vote. There are three of them. So a motion is made to indemnify, first to defend, then to indemnify the president. He abstains. The other two say yes. Then the next motion, the president moves to indemnify and defend in two separate motions. Skidmore. Skidmore abstains. And finally, somebody moves to, oh, Trustee Sindler, defend and indemnify him. And he abstains, but the motion is carried. There is a final one that there is a motion to indemnify Charles Muscarello as attorney for Wasco Sanitary District from all claims and expenses, including any court costs, investigation costs, actuarial studies, attorney's fees, and actual and punitive damages associated with the refiled FIALA, which I assume we're calling FIALA 2. This was the vote that was taken on May of 2010 that resulted in the February of 2014 order. If there were issues at the time that order was entered and you believed or the district believed it to be too broad, what can we do about it now if there was no appeal? Well, Your Honor, I think we're moving away. The issue that we're trying to address right now is whether the circuit court could, in the first instance, appropriate our discretionary authority. They had already appropriated, not you personally, the district had already appropriated it. It said that we will make these payments. Right, but it's not set in stone. Per the statute itself, it's always subject to qualification. So even if they did set it in stone, they can't conflict with what's in state statute. It's always subject to qualification that they can't be indemnified or defended for certain types of issues. And because this incredible case is still in the pleading stages, this Court may have said several things, keeping certain counts and disposing of other counts, and the Supreme Court may yet say something because I understand there's still a PLA pending on Colorado up there. And maybe they'll rule on it sooner than later. But the fact remains, there has been no dispositive case, decision, that says that it was a violation of the public trust. It was this, it was that. But the defense, the authority to defend an indemnification doesn't require that. It's left to the district's discretion, not a court's, respectfully, not a court's, no one other than the members of the Board. And their decisions are subject to review. All of the issues you're identifying may vary well and are legitimate. However, the proper procedural posture to address these is in the declaratory after the act was taken, not when the circuit, the judiciary steps in and says, you will not do this in no instances. And before you exercise that discretion, you have to come to us and ask. What we're saying is that is too broad. That may apply to the 2017 vote. We have two separate votes here. But it can't, if I let, or if this panel lets, or if any judge lets Wasco not obey a court order, then why don't I let the three defendants or two of the criminal defendants this morning who appeared here by way of their counsel not comply with court orders? That's court order rules. To be clear, we're not advocating ignoring court orders. We didn't pay. I'm sorry? You didn't pay initially. They got you into court. I'm trying to clarify. We didn't believe it was as broad as the circuit court took it to be. We reported to court. We worked with the parties to work this out. We voluntarily agreed to continually increase the bond. This is not where we're trying to skip out. We're trying to resolve this in a constructive manner. What we're saying is the court could not enjoy the vote and put us in contempt for that vote. A lot of these issues about whether or not you allow the district to withdraw indemnification, we believe those are issues that can be addressed in the proper procedural setting. And that is in a declaratory that we abused our discretion. And it's their burden to prove that we abused our discretion, as opposed to the district's exercise of their legislatively granted discretion to have to go to a co-equal branch of government and ask for the okay to do what's been granted to them. And now it's our burden to exercise our discretion. Whether or not it's a good idea or whether or not it violated due process rights or something along those lines, which I bet this is not the proper way that the district should have to do this. I give an example. Central Austin Peace City in Chicago is an appellate court case where residents of the Austin neighborhood brought in action complaining about the 911 responses and how it's much better for the white community versus minority communities. The court did not step in and say this is how you're going to do it. What they did is they maintained jurisdiction and said, you know what, you're violating rights here, city of Chicago. You need to go back and come back to us with a plan. We're not going to tell you what the plan is because that's your job. That's a separate governmental function of a different branch. But you have to come back to us and submit your plan and let us review it and let us determine if it comports with constitutional and statutory requirements. They did not dictate to the city what it was going to do. It kept itself in a reviewing posture. And the circuit court in this case did not do that. Now, hasn't that, though, been forfeited, that argument? Hasn't your argument that you're making right now been forfeited by the fact that it wasn't appealed or it wasn't asked to be vacated or it wasn't asked to be reconsidered? I would say first, no, because if it's a void order because it violates the separation of powers, it's void. There's an opinion here that it may be void, but there's certainly no definitive judgment. In response to that, Your Honor, I would say that when the May 2010 votes were the votes in play, that opinion was okay because it was interpreting the May 2010 vote. The district was abiding it because it was the last act of discretion. Rightly or wrongly, they didn't interpret that order as impinging upon their discretionary authority. When it became problematic is when they took the 17th vote. The 17th vote and when the 14th order, when the 2014 order was used to appropriate the discretion that was exercised in 17 is when it became, in our opinion, problematic from a separation of powers standpoint. I have one other question. Okay. Let's say we agree with Wasco on everything you've said. What do we do or what happens to all of the contracts that were entered into with the law firms that don't relate to that order, that just say, we will provide services throughout these cases. We're not doing anything with those, are we? I don't believe the contracts would be nullified. So they still exist. Why not? Why would they not still exist? They're not related to a court order. Because they're no longer, because the district is no longer providing their defense and identification. Now, if the declaratory action is brought and it said, Hey, Wasco is, when they took this 17 vote, they're abusing their discretion because it affects vested rights. And there's hearings and briefing on that issue. And the court says, you know what? You're right. You're right. This vote did violate vested rights with all different concerns you may be raising. Well, then the order says, no, that 17 vote is no longer good. And those contracts are what they are. They're still in place. The 17 vote had no effect. But that is not where we're at. That is not how this proceeded. I know. We're not there. But that 17 vote, as I have seen it generally, doesn't say, And we, therefore, take the position that all contracts with law firms are void. It doesn't say that. Well, it's a necessary implication that if the defense is being terminated. Okay. Okay. Thank you. You'll have an opportunity to make a rebuttal. Thank you. Mr. Vaught. Good. Thank you, Mr. McDonough. For the next minute, morning. May it please the court, counsel. My name is Adam Vaught. I represent the trustee defendants. Counsel may need to agree on maybe one thing, and that the separation of powers is implicated in this case. However, the issue is whether or not court orders can be nullified by a sanitary district that's hires of following a court order. The order that we're dealing with here is the 2014 order, which was issued after cross actions for declaratory judgment, which found that the district did have the duty to defend and indemnify the trustees. Three years after that, the district followed the order. They never appealed, never questioned to this court whether or not that judgment had been correct. Instead, in March of 2017, the district voted to just say, we're not going to do this anymore. We're not going to pay. They didn't go to court and say, we think things have changed. Counsel mentioned the Fifth Amendment complaint versus the Third Amendment complaint. They didn't go to the court and say, we think this is a difference. They just said, we're not going to pay and wrote a letter. We had to go into court to hold them in contempt. And even then, their argument was not that anything really changed, but that this is going to violate the separation of powers. The courts – I thought I just heard an argument from Mr. Welch that things had changed, that there was a fifth complaint, and that the fifth complaint alleged disqualifying factors that would preclude the board from being authorized to identify and pay attorney fees. Well, I would disagree that things changed. In fact, Fiala's attorney, when asked in the trial court whether or not the Fifth Amendment complaint was different from the Third Amendment complaint, actually said they're basically the same, and the trial court found the same. Not only that, originally, when they filed the declaratory judgment action, their argument was that this is outside of – this is outside of what they're allowed to do. They were saying it was willful and wanton. It was outside the scope of their duties. And so the court – they shouldn't be defending under the Sanitation Act. And the court disagreed. The court said, I can't tell that, based on these allegations, whether or not it clearly falls outside. So nothing changed, because not only did Fiala's counsel say the Fifth and the Third Amendment complaint are the same, but the argument itself was raised. And again, it wasn't challenged to this court in 2014. So I would just disagree that there is a change. Well, what if – what if governments, being what they are, are fickle? Change their mind? Get back to the engagement room? I mean, there are ways to do that. You go to court and you say we – you know, you can pass it. You go to court. You challenge. You say, we think this is different. And you let the judge decide whether or not that order still stands, whether or not there's a reason to vacate. And that's, in fact, what they did after the contempt finding. And the judge still said no. Correct. After the – yeah, that's what they did. It wasn't until the day they filed the response to the rule to show cause that they actually filed a motion to vacate, which was, I think, it was in October of 2017. So we're talking about five months later. But – seven months later. But, you know, then the judge said, I don't see anything different. All you're alleging is that there's been the vote. Well, the vote doesn't affect what had happened that I looked at in 2014. And, in fact, if, you know, we had argued that the statute – they said the statute gives them the discretion. Well, the statute gives them the authority to decide whether or not to indemnify. But it doesn't state that you can later on decide to revoke that when the costs become too high. The judge had mentioned that under insurance law analysis, if there is a claim that's brought to the insurer, the insurer has two choices – well, three choices, just pay for the defense and then indemnify, or file a reservation of rights, which says we'll defend, but we have issues about whether or not we think we would have to indemnify, or file a declaratory judgment action. And that's what happened here. Well, in fact, did the judge consider – and, counsel, I do not know if you were on the last appeal of this particular matter – but, in fact, midway through the proceedings of the appeal, WASCO went from one side to the other side and said, we don't agree with this anymore. You're right, Judge. They're wrong. We're out. They vote. That is a change that occurred, a significant change, at least from our perspective as we dealt with that case. Was that even considered by Judge Ackman? I don't believe that issue had quite come up, but I do think that's important, and here's why. So now you have a board. And I should mention that when the three trustees were being sued, two of them left the board in 2010. And so for at least 2011, after 2010, up until presently when none of them were trustees, there was only one. There was a majority of the board that was not defendants in this litigation. But now that the board has switched sides, it's working at the same time they're trying to pull out the defense costs. So not only are they saying, no, we now agree with the plaintiff, but we're going to make sure that these defendants don't have attorneys. After seven years of having been provided an attorney and under a court order that the defense costs based on the vote in 2010. So I think it's very important to look in the larger context of what's going on. But unless Wasco abused, Wasco Senators abused its discretion in that vote, they are entitled to that vote. I don't believe that. And the things that roll from that vote. I don't believe they're entitled to that vote because the Sanitary Act doesn't state that once indemnification and defense have been given, it can later on be revoked. And that's the Sherwood case that we cited from the Supreme Court, analogizing when the city of Chester had opted to vote to join IMRF. They decided they wanted to withdraw from IMRF a year later. They hadn't paid any funds. They hadn't completed all the forms. They just decided we want to come out. And the Supreme Court said you can't do that because you're under a very limited statute that gives you only one certain authority. And that's to decide whether or not to opt in. Once you're in, you're in. And here, that's the similar case. The Sanitary District Act says they can decide whether or not to indemnify and defend. They decided to do so in 2010. And then the court held that that was a valid exercise of their discretion. So now three years after the court ruled that that was a valid use of their discretion and a new board is saying, never mind, we're going to decide with our discretion that we're not going to pay that anymore, they don't have the authority under the Act. But there is a, and if, you know, we're not talking about cases that directly apply because none of them do that we're all talking about, but there is a zoning case where this court held that a new board, well, the dissent held that a new board could change the position of the existing board to take a part of a Benedictine University and make it a Meijer store and a gas station. And the Supreme Court said that's right. So they could do that. And that was a significant issue on behalf of Meijer, Benedictine University and the people who thought that that was a good idea. But it could change because if the board changes and they do not abuse their discretion they can make another decision. Well, the board here hasn't really made a different decision because in January of 2017 they passed a policy that was going to create a new method of indemnification of defense. They said the board itself, the members of the board, the officers and the employees of the district will be defended and indemnified. They purchased insurance and they set reserves in order to cover that. So the policy of the board hasn't changed. They're still going, if I can finish. They're still going forward with defense indemnification policy. They just said we don't want to pay these fees anymore. So it's retroactive specifically to these people, not to anybody else. All right. I have one question about the contempt of court hearing conducted by Judge Ackman. Was that an evidentiary hearing? What did he consider in making his ruling as far as the contempt of court? My understanding is he took argument. It wasn't an evidentiary hearing. They presented their argument that the separations of powers doctrine rendered his previous order void and he rejected them. Okay. Thank you. Your Honor, we would ask that you affirm both orders on appeal in this case. Thank you very much. Mr. Bobway, you may proceed. Good morning, Your Honor. Jim Bobway on behalf of Charles Muscarello. A couple things. A question came up about the duty to defend. And the duty to defend all of the orders in this case, the February 2014 order, the contempt order, and the order denying the motion to vacate the order prospectively, all of those were duty to defend cases. There's never been a ruling on indemnification specifically. That's true, although the motions that were made were much more inclusive than that. Right. But the judge himself has never. It's not an issue that has come up on appeal. The underlying orders don't deal with that. Well, is it right? I don't think it is right now. And frankly, there's not. There's a lot for these defendants. The fraud claim is gone, as you know. The conspiracy to convert claim is gone. There's a few claims left. The public trust being a principle. And interestingly enough, those are the claims that the very first judge who ever heard this case, now both of them are actually, I think there might have been three, but two of the three have been retired. That first judge said something to the effect, when you get to these issues, public trust, the public official, that other one, it begins to, I think his words were smell. This was a judge, and I can't remember his name. Schreiber? Brown? Yes, Judge Brown. Thank you. As I recall, he said something like that based on the pleas. That's correct, Your Honor. And one of the things I wanted to talk about, too, and you brought it up, they misrepresented the record here on Mr. Muscarello. There was a vote to defend Mr. Muscarello. They say it never occurred. And as you read, what it says, they identify, and maybe it's not artful, but they say they identified a paid attorney. But they say for attorney's fees. I know, but I've looked at this, and I couldn't find it earlier, but on each of the other three, they say first to defend, then to indemnify. First to defend, then to indemnify. They only say indemnify. And in their answer to the counterclaim that Mr. Muscarello filed, they admitted, they quote, the district board voted to defend and indemnify Muscarello. So they admitted this already. And the language says indemnify for attorney's fees. And the district completely fails to come to grips with the fact that Mr. Muscarello has a legal services agreement. The legal services agreement, which is part of the record, and they admitted in the answer that it was entered into, in the agreement, the district agreed to indemnify and hold harmless Mr. Muscarello for reasonable attorney's fees. So it's there. And all of these talks about voting and which vote to... You're saying that the new board doesn't have the authority to vacate or abrogate the service agreement that your client had with it? They don't have it. Retroactively, to get rid of the consideration for besides getting paid for his services, there was an indemnification and hold harmless agreement. And no, they don't have the power to retroactively say we're not going to honor that. The new board can't come in and violate the contracts that were entered into by the prior courts. Can they say that prospectively? I don't... Not retro, but prospectively. I don't think so, because the consideration was that he would get this defense. And they agreed to that. And the municipalities and these governmental bodies are bound by contracts just like private individuals, and the courts have been consistent on that and very clear on that. So as in Mr. Welsh's suggestion when I asked him what would happen to those, he said, well, they would end. So your position is they would not end. Those service agreements would not end if we agreed with WASCO 150% in this case. Yeah, right. You can't just say that they don't have to honor their contracts. That's not the law. I mean, it's the appellate court... Well, that's not this case either. This case is not about contracts. Well, it is about... It's about Mr. Muscarello's contract and a duty to defend. The board agreed to that. Well, it only gave him. It didn't give his current law firm, did it? Well, it gave him. It gave him. Right. And his current law firm is not independent in this case. He doesn't work for WASCO anymore. He's not employed by WASCO anymore. Correct. He's no longer, but that doesn't... So that doesn't change... It didn't say, but our duty to hold you harmless will end if you are no longer working for us as an attorney. They gave that commitment. They gave that contraction commitment. And as the appellate court said at Evergreen Park, a contract is a contract, and a governmental entity must abide by its contractual obligations the same as an individual. Now, so the district's separation of powers and legislative prerogative arguments do nothing to change this. The district's discretion became subject to that contract, and they can't just simply violate it. Now, the district argues that, you know, they also make arguments about the vote and contractual agreements to defend them somehow, as we talked about violating Dillon's rule. Well, they've argued that. They argue that that was the first case. They didn't appeal it. Res judicata, it's gone. They could have raised all of these issues that they're raising both in trying to get out of the payments that haven't been made, that they've been found in contempt for, and the payments in the future that they're saying, oh, the court shouldn't have said that they had to keep paying those payments. I mean, if there are any defense costs, let's just say if, wouldn't they still have to be considered reasonable? Oh, absolutely. Who's making that determination in this? Judge Aikman. There was, you know, and there was a question also about evidence, and I'm going to get to that, but he made those. We presented affidavits. We were there for testimony. They didn't want to cross-examine, but it was, he looked at the fees. It was all presented to him, and that's how he decided what to order. And yes, the reasonableness of the fees is always an issue that can be challenged and addressed. And there was, there wasn't, the district didn't want evidence at the time of the contempt hearing or the motion to vacate. There wasn't, you know, except for what was provided in the papers that you all have, there wasn't further evidence. But there was stipulation about, you know, they knew about this, they had the wherewithal to pay these fees, and that was all presented to the court. Again, I don't think, on a going forward basis, Mr. Muscarello has the contract that says his fees should be paid for, and they have a duty to defend him, a contractual duty to do that. But there's also, there's a change that suggests that, as Judge Aikman found in the presentation, he knew what had happened in the court. He knew that the district had pulled out and switched sides on this. Did the district raise any defense to your service agreement argument relative to its against public policy or anything? No, they've kind of always ignored it, except they kind of tried to say, I think, you know, or at least it would fall in the end of it, if they hadn't said it explicitly, that you can't enter into that, this kind of agreement, because it violates 12.1, that it's some violation of that. But that's the same agreement that was denied in the original February 2014 order, that they didn't appeal. You know, they didn't take that up. Should Judge Aikman have, regarding the motion to vacate, should he have been concerned with the question of whether the 2017 vote was an abuse of discretion? I don't think it was ever. Or was it even brought up? Well, what was said was that the arguments that they were making at that point, you know, he found that there was no change circumstances. Right. And isn't that a change in circumstances? Number one. And number two, was it raised or should he have been concerned with whether or not it was an abuse of discretion? I'm sorry, I didn't mean that. What was raised by the district at the time was saying, you know, it's the legislative process. I mean, it was the same arguments that they make on the appeal of the contempt order itself, the prior contempt order. It's saying, oh, you know, separation of powers. They didn't say, you know, they said we had the right to do it. But we were always saying you had to come to the court to do it. And there are some circumstances, which is what was argued to them, which was the fact that the third amendment complaint and the fifth amendment complaint were not different. You know, Judge Phenis had found that. Judge Phenis had said, you know, they are the same thing. There isn't a change here. And so it was, they didn't want to pay anymore. They didn't want to pay. The court says you've got to pay. Now they've stopped paying because they still don't want to pay. And they just can't do that. They can't do it, and they shouldn't be able to do it prospectively for Mr. Mosgrillo because of the contract. Thank you. Thank you. Mr. Welch. Yes. Pardon me, Mr. Ingersoll. Well, it says Mr. Ingersoll. I apologize. Has he decided not to do so? Apparently. Okay. He hasn't moved, so I'm guessing. There have been many statements that the complaint's not different, that the judge said it's not different, that the attorney said it's not different. It's the board's determination on whether it's different, and it's a question of whether they abused their discretion. Is that something that Judge Reckman considered or should have considered, whether or not it was an abuse of discretion on the part of the board? Yes, but honestly, it shouldn't have been in a motion to vacate because now you've shifted the burden onto the district to prove that it's their burden now to say that they should be able to use their discretion as opposed to a party opposing the exercise of the discretion. It's their burden to show we abused our discretion. But it's your action, it's your district, and it's the public trust from the community that's at issue. Why won't you, not you personally, but why wouldn't one consider this appropriate action to take to bring forward the issue of abuse of discretion? Well, we did believe that, we did argue that this wasn't within his authority, that our action was offensive. But we did argue that we did not violate their vested rights. The other side argued that their vested rights were violated by this act, which is going towards abuse of discretion. And we laid out, point by point, why we did not violate their vested rights and why it was not an abuse of discretion. What we're really doing is, it's synonyms, right? We're talking about a violation of vested rights. Well, what really is going on is whether there was an abuse of discretion. There was also some statements about an ordinance that was passed and we've changed our policies. That ordinance is still qualified per Section 12.1a. Under that ordinance, the district cannot identify or defend its officers or employees for absenteeism. That's a violation of vested rights that are outside the scope of their duties and willful and wanton. So when is that determined, though, whether or not it's outside the scope of their duties or willful or wanton? Is that determined at the point that the complaint is filed or is that determined after there's been a disposition by a judge or jury that that has been the case? Well, if it says defense and it's a mere allegation of willful and wanton misconduct, enough. And the cows are out of the barn if they pay for the defense and it ends up being willful and wanton. Why do you know that, though? But see, it's the General Assembly. They have not put restrictions  They have left. It was the General Assembly's decision to give broad discretion to this district. And the district is exercising that discretion. If the General Assembly intended to put the concerns that you're raising, they had the ability to put that in the statute, but they didn't. They didn't. And so that's what we're here today is to talk about what level of discretion and how and when did this court order usurp that discretion in the first instance. If the defendants had the burden to establish an abuse of discretion and the trial court didn't entertain that procedure, then should it be remanded so that procedure can be implemented? I don't think it should be remanded. There should be a declaration, action, declaratory action, sorry. It's a separate issue. It has nothing to do with the 2014 order. The 17th vote is different. They can bring a declaratory action if they believe it was an abuse of discretion. You referenced Dillon's rule, did you not? I did. In what context were you referring to it? That the sanitary district is a non-home rule entity. It only has the authority that is specifically granted to it, the state statute. If that's the case, then where in the statute did it say that you have the ability to withdraw a grant of defense and indemnification? Under Dillon's rule, you also have those powers that are necessarily implied and you cited a number of appellate court case law that states the authority to grant necessarily, there's an implication that you have the authority to repeal. What's your response to Mr. Bobway's argument that this agreement between a contractual employee who was a lawyer representing the district isn't entitled to attorney's fees to defend himself based upon the contract that was entered into between him or between him and the district? So I would make a distinction between the contracts with Henshaw and Feuville versus the contract with Muscarelle and the district. There's two different those are two different matters. When I spoke to Justice Hutchinson about the contracts ending that was more in relation to the district paying these attorney's fees. The defendant trustees are more than welcome to continue to retain them on their own but the district would no longer be liable. As it relates to Muscarelle's contract with the district, this act did not revoke any liability under that contract. In fact, there's liability. Well, does that then mean that so far as Mr. Muscarello is concerned we should affirm the judgment of the trial court? There's no order from the circuit court on this contract issue. The affidavit's order relates solely to the district's liability in relation to the vote. If you look at the legal services contract, and again, Justice McClaren, I'm going to go back to Dillon's role if we can get him to monitor Dillon. You draw first. The legal services contract with Muscarelle and the district is itself ultra vira and void of initiative because it contains provisions that are  in the contract. However, those issues were not at play. In 2014, it's solely related to the votes that the trustees took to identify themselves. The judge did not address the contract. Is the court order void or is it just erroneous? It's void. And it's void because it violates the separation of powers or because the court didn't have subject matter jurisdiction. Well, it's void because it violated the separation of powers in order that the court doesn't have the inherent authority to do that. Would you agree that the separation of powers has its limitations and one of them is the intervention of rights of various parties that might preclude or raise an estoppel or a latches claim that would preclude? Your Honor, absolutely. And that's what I've been arguing from the beginning. No, you haven't, because what you asked for was a reversal instead of a remand back to the trial court for an adjudication on all the things that I've just mentioned. Well, because a remand, the procedural posture that was a contempt, what I'm saying is the 2017, they absolutely can bring these issues, but they have to bring a declaratory. And I'm not going to die on this hill whether it's a remand or a new action. Maybe it can work, but in my mind it would need to be a new action. Let's just say that since there's a court judgment that has less merit than was there not a judgment that was entered by the trial court previously. You want me to say it again? Yeah, I'm trying to. You said that they could kill the bird with one of two stones, either a declaratory or the way they did it was an error. And the argument that what they did was an error was because their court entered an order, I believe fails to take into account that the order was an agreed order, was it not? I don't want to state something I'm not sure on the record. Okay. But I think at the time it was entered it was an agreed order and more importantly it wasn't appealed. The February 2014 is an agreed order? What about if I could just say whether it's agreed or not if it goes beyond the authority of the court. How can it go beyond the authority of the court if it was agreed by the parties? You're essentially arguing that you invited error or at least the district invited error. Because this is as Justice Hutchinson said earlier, boards change over time. Former boards cannot tie the hands of future boards by doing what's illegal. And if they're tying the hands of a future board it cannot stand because it's terrible public policy. And so because these trustees agreed to do something in 2014 they can't take that future authority away from a 2017 board that has been elected by the people that make up the West Coast Senate. I have no problem with the general opinion of  you very much. Senator Peruzza? I have no problem with the general opinion of the West Coast Senate. I have   with     the West Coast Senate. I have no problem with the general opinion of the West Coast Senate.